# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 - RETAIL FOOD EMPLOYERS PENSION FUND, et al., | ) ) ) ) | CASE NO. 1:08 CV 735 |
| PLAINTIFFS, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| FOREST HILLS SUPERMARKET, INC., | ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) ) ) | |

Before the Court is plaintiffs' motion for summary judgment (Doc. No. 24), defendant's response (Doc. No. 25), and plaintiffs' reply (Doc. No. 26). Plaintiff also filed an unopposed motion to strike the affidavit of Basem Odetallah. (Doc. No. 27.) For the reasons set forth below, Doc. No. 24 is **GRANTED** and Doc. No. 27 is **GRANTED**.

## I. BACKGROUND

On March 24, 2008, trustees of the plaintiff employee benefit plan ("the Plan") brought an action pursuant to Sections 502(a)(3), (d) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (d) and 1145, and Section 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185, to collect contributions due to the Plan by the defendant under the terms of a

collective bargaining agreement (CBA) and the Plan. At the time of the filing of the complaint, the exact amount owed was unknown. An independent auditor conducted a payroll review of documents collected during discovery for the period of January 1, 2004 through December 31, 2007. Based on this review, plaintiffs now move for summary judgment, asserting that the defendant is delinquent in its contributions[1] in the total amount of $43,769.92.[2] Plaintiffs seek to recover all delinquent funds, plus interest, liquidated damages, attorney's fees, auditor's fees, and other costs and expenses of the litigation.

Defendant filed a brief response to the motion for summary judgment, supported by the affidavit of Basem Odetallah, objecting only to (1) the failure of plaintiffs to allow a credit for overpayments which, according to defendant, were due to "mistakes made by the office[;]" and (2) plaintiffs' assertion that they are entitled to interest, liquidated damages, attorney's fees, auditor's fees and other costs and expenses.

Plaintiffs filed a reply and a separate motion to strike the affidavit of Basem Odetallah. In the motion to strike, plaintiffs argue that Basem Odetallah has no personal knowledge of the procedures used to determine and to pay the required contributions and that, if anyone has such knowledge, it is Jacqueline Miles, who has not filed an affidavit.[3] In the reply brief, plaintiffs assert that any claim for a refund must first be made through an administrative

---

[1] The delinquencies by year are as follows: 2004 - $11,208.60; 2005 - $10,185.36; 2006 - $10,608.32; and 2007 - $11,767.14.

[2] The audit also revealed that, in addition to the delinquencies, defendant had made contributions during certain periods of time on behalf of several individuals who were not listed on the payroll records. The specific individuals include: (1) Louis Anzalone for October 15, 2005 through December 31, 2007; (2) Mazhar Khan for November 17, 2004 through December 31, 2007; (3) Bassam Odetallah for January 1, 2004 through December 31, 2007; and (4) Munir Odetallah for January 1, 2004 through June 20, 2004 and March 1, 2007 through December 31, 2007. No credit was allowed by the auditor for these contributions.

[3] In its responses to plaintiffs' interrogatories, defendant identified "Jacqueline Miles -- Office Clerk" as the person "who prepared or assisted in the preparation of contribution reports submitted by Defendant to the Pension Fund in connection with hours worked by Defendant's employees[.]" (Doc. No. 26-2, Int. Nos. 11, 12.) Employees' work hours were determined by the defendant "from payroll records." (*Id*., Int. No. 13.)

process which defendant has not used and that, even if a refund were warranted, it would not be dollar-for-dollar.

## II. DISCUSSION

### A.  Summary Judgment Standard

When a party files a motion for summary judgment, it must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial." Rule 56(e)(2). Affidavits filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Rule 56(e)(1).

### B.  Factual Background

Defendant was required to make monthly contributions to the Plan on behalf of all its bargaining unit employees pursuant to the terms of a CBA with the United Food and Commercial Workers Union Local No. 880 ("the Union"). (Compl. ¶¶ 10-12, 14 and Exh. B; Answer ¶¶ 10-12, 14.) The amount of contributions owed on behalf of each bargaining unit employee is based on the number of hours such employee works during the month, which are capped at forty (40) hours per week. (Compl. ¶¶ 14, 15 and Exh. B; Answer ¶¶ 14, 15.) Defendant was also required to supply the plaintiffs with monthly contribution reports detailing

the number of hours each bargaining unit employee worked. (Compl. ¶ 15 and Exh. A; Answer ¶ 15.)

The plaintiff trustees are allowed to "authorize and employ an independent auditor who shall have the right to inspect Employers' records" to "determine or verify the amounts of contributions payable." (Compl. ¶ 22 and Exh. A; Answer ¶ 22.) In this case, plaintiffs did employ such an independent auditor to conduct a payroll review of defendant's books.

The payroll review showed that defendant had 49 employees in 2004, 52 in 2005, 51 in 2006 and 51 in 2007. (Motion Exh. B, at Exhs. 1-4.) Under the CBA, Plan contributions are required to be made on behalf of bargaining unit employees once they have worked for the defendant for one year. (Complt. ¶ 14 and Exh. B; Answer ¶ 14.) In conducting his review, the independent auditor compared the amounts actually paid, as shown by the contribution reports, to the amounts that should have been paid pursuant to the terms of the CBA on behalf of the bargaining unit employees listed in the payroll records. (Motion Exh. B, ¶¶ 3-4 and Exhs. 1-4.)

As noted above, the independent auditor determined that defendant owes the Plan a total of $43,769.92 in delinquent contributions. Plaintiffs wish to recover this amount, plus interest, liquidated damages, attorney's fees, and all other fees and costs associated with this collection action, including the auditor's fees. The independent auditor also determined that defendant had made contributions on behalf of four individuals not listed on the payroll records. Plaintiffs do not want to credit these contributions against the delinquent contributions.[4]

---

[4] In fact, the affidavit submitted by the independent auditor only reveals the *fact* of these overpayments, not the *amounts*. The amounts have been supplied by the defendant.

4

This entitlement to a credit is one area of dispute between the parties. Defendant asserts that it is entitled to credits as follows for the following persons:

| | | | |
|---|---|---|---|
| Louis Anzalone | 10/15 thru 12/31/05: | 711.80 | |
| | Year 2006: | 1,190.40 | |
| | Year 2007: | 1,190.40 | $3,092.60 |
| | | | |
| Bassam Odetallah | Year 2004: | 998.40 | |
| | Year 2005: | 1,190.40 | |
| | Year 2006: | 1,190.40 | |
| | Year 2007: | 1,190.40 | $4,569.60 |
| | | | |
| Mazhar Khan | Year 2004: | 41.60 | |
| | Year 2005: | 1,190.40 | |
| | Year 2006: | 1,190.40 | |
| | Year 2007: | 1,190.40 | $3,612.80 |
| | | | |
| Munir Odetallah | Year 2004: | 915.20 | |
| | Year 2005: | 421.60 | |
| | Year 2006: | 992.00 | $2,328.80 |
| | | TOTAL | $13,603.80 |

The other area of dispute has to do with plaintiffs' entitlement to interest, liquidated damages, attorney's fees, auditor's fees and other costs and expenses of the litigation. Without any support or legal argument, defendant simply asserts that "[t]here is a genuine issue of fact" with respect to these matters. (Opposition, at 2.)

**C. Discussion**

Since defendant does not dispute that it owes the delinquent contributions amounting to $43,769.92, this matter need not be discussed and judgment in that amount will be rendered in favor of the plaintiffs.

**1.      Entitlement to Credit for Overpayments**

Defendant argues that it is entitled to a credit against its unpaid contributions in the amount of $13,603.80 because it mistakenly made contributions for four individuals who

5

were not on the payroll. Defendant asserts that contributions were made on behalf of Bassam Odetallah and Munir Odetallah because the office staff confused them with Basem Odetallah and Munira Odetallah, respectively. Defendant argues that this was easy to do because the pension reports submitted by the plaintiffs to the employer contain only the last name and first initial of each employee. Contributions were made on behalf of Mazhar Khan and Louis Anzalone because they were listed on the preprinted report supplied each month by the plaintiffs which the office staff simply filled in identically to the month before, since each employee allegedly worked the same number of hours each month.

Plaintiffs assert that the Plan may (but is not required to) refund an overpayment where the payment was made by a "mistake of fact or law," but that defendant must first make such a request through administrative proceedings.[5] Plaintiffs also argue that, given the facts of this case, "the Court may readily draw an inference that Forest Hills did not make a mistake of fact or law when it made contributions on behalf of individuals for time periods during which they are not listed on Forest Hills' payroll records." (Motion at 9.) Especially given its small number of employees, "it may be inferred that Forest Hills knew who it employed at any given time." (*Id.*)[6]

---

[5] ERISA Section 403(c)(1), 29 U.S.C. § 1103(c)(1), provides in relevant part that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." An exception to this prohibition is found in subsection (c)(2)(A)(ii), which provides: "In the case of a contribution [. . .] made by an employer to a multiemployer plan by a mistake of fact or law [. . . ], paragraph (1) shall not prohibit the return of such contribution or payment to the employer within 6 months after the plan administrator determines that the contribution was made by such a mistake."

[6] Plaintiffs claim that the "mistakes" with respect to these individuals were not minor and isolated, but were "significant, glaring and systematic." (Motion at 9.) In particular, contributions were made on behalf of Louis Anzalone for over two years after the defendant's records show that he was terminated. Similarly, contributions were made for Mazhar Khan for over three years after his termination. Contributions were paid on behalf of Munir Odetallah for almost six months before the payroll records show that he was even employed by the defendant *and* for an additional ten months after he was terminated. Even worse, Bassam Odetallah was *never* employed by the

In support of its argument for a credit, defendant submits the affidavit of Basem Odetallah, the "Secretary and one of the Managers of Forest Hills Supermarket, Inc." (Doc. No. 25, at 4, ¶ 1.) Attempting to explain "overpayments [. . .] due solely to mistakes made by the office[,]" (*id*., ¶ 5), Odetallah claims to be "*familiar with* the procedure followed by Forest Hills Supermarket in paying pension contributions[.]" (*Id*., ¶ 2, emphasis added.) However, contrary to Rule 56(e)(1), the affidavit does not state facts on any personal knowledge and actually states that one "Jacqueline Myles,"[7] identified as the "Office Manager," handled all payment contributions for the periods 2004 through 2007. (*Id.*, ¶ 3.) There is no affidavit from Jacqueline Myles setting forth the facts relating to her handling of the contributions.

Plaintiffs have moved to strike the affidavit of Basem Odetallah because it is not made on personal knowledge. The Court finds plaintiffs' motion well-taken and, in any event, is of the view that Odetallah's affidavit is insufficient to establish any mistake on the part of the defendant. Aside from not being made on personal knowledge, the affidavit does not state that Mr. Odetallah reviewed the payroll records (on which contributions are based), had ever reviewed the allegedly confusing documents whose format is blamed for the mistakes in contributions, or could ascertain that mistakes had been made merely by reviewing the auditor's payroll review report.[8]

---

defendant at any time during the relevant payroll period, even though contributions were made as if he were employed full time for the entire period.

[7] This is apparently the same "Jacqueline Miles" referred to in the answers to interrogatories referenced *supra*.

[8] Even if the Court were to credit the Odetallah Affidavit, his assertion that Bassam Odetallah was confused with Basem Odetallah when making contributions (Odetallah Aff. ¶ 6) is not credible when one views the contribution reports which list each employee's social security number, last name, first initial, middle initial, hire date and contribution rate. (See Doc. No. 26-3, Werner Aff. ¶ 3 and Exh. A.) The contribution report lists two distinct B. Odetallahs, with different social security numbers, making it virtually impossible to confuse them.

It is also not credible to say, as Mr. Odetallah does (Odetallah Aff. ¶ 6), that the office confused Munir and Munira Odetallah when making the contributions. Payroll records reveal that Munir was a full-time employee for whom contributions were made both when he was employed and when he was not employed, whereas Munira

Plaintiffs also argue that, in order to obtain a refund of overpayments, defendant is required to first request a refund through administrative proceedings. The regulations governing benefit plans provide that an employer who asserts an overpayment must "establish[ ] a right to a refund of the amount mistakenly contributed or paid by filing a claim with the plan administrator within six months after the date on which the plan administrator determines that a mistake did occur." 26 C.F.R. § 1.401(a)(2)-1(b). The employer "must demonstrate that an excessive contribution or overpayment has been made due to a mistake of fact or law." 26 C.F.R. § 1.401(a)(2)-1(b)(2). In this case, there is no evidence that defendant ever attempted to obtain a refund through the proper administrative proceedings. Therefore, it is precluded from raising any such claim for a credit or refund in the first instance in this Court.[9]

The Court finds no basis for granting a credit within the confines of this instant action for collection of delinquent contributions and has no opinion as to whether defendant would be entitled to a credit under the appropriate administrative proceedings. However, the Court does note that there is Sixth Circuit authority for the proposition that defendant, if denied a credit through administrative proceedings, would be entitled to bring a separate action under

---

worked varied hours, was generally well below full-time, and no longer worked for defendant after January 2006. If the defendant had confused Munir with Munira, then the reported hours and contributions should have reflected Munira's part-time status and should have stopped after she no longer worked for the defendant; however, Munir's hours were always reported as full-time and continued past January 2006. (Doc. No. 24, Exh. B, at Exhs. 1-4.)

Mr. Odetallah asserts that because "[t]he names of [Mazhar Khan and Louis Anzalone] were preprinted on the report received by the employer" (Odetallah Aff. ¶ 7), this formatting of the report somehow caused the mistaken contributions on their behalf. However, ERISA is a self-reporting system wherein it is the employer's responsibility to make pension contributions on behalf of all covered employees, whether or not they are listed on the pre-printed report. In addition, the employer is warned in bold letters at the bottom of the report to note any status changes regarding its employees and to "add any new or rehired employees" and "indicate any terminated employees." (Werner Aff. ¶ 6 and Exh. A.)

[9] Even if the defendant were entitled to a refund, it would not necessarily be dollar-for-dollar. The relevant regulations provide that the amount of contributions to be refunded must be reduced by "any losses attributable to an excess contribution" and must "in no event reduce a participant's account balance in a defined contribution plan to an amount less than that amount which would properly have been in that participant's account had no mistake occurred." 26 C.F.R. § 1.401(a)(2)-1(b)(2)(ii).

federal common law to attempt to recover the overpayments. *See Whitworth Bros. Storage Co. v. Central States, Southeast & Southwest Areas Pension Fund*, 794 F.2d 221 (6th Cir.), *cert. denied*, 479 U.S. 1007 (1986) (holding that an employer may bring an equitable action for restitution under federal common law to recover contributions made by mistake to an employee pension fund), *appeal after remand*, 982 F.2d 1006, 1017 (6th Cir. 1993) ("a pension fund's refusal to refund contributions paid by mistake is arbitrary unless retention of the money is necessary to the financial soundness of the plan or justified by some other compelling reason"), *cert. denied*, 510 U.S. 816 (1993).

The mere fact that there *may* be some basis for a refund does not, however, affect the fact that defendant had an affirmative duty to pay particular contributions on behalf of its employees and failed to do so. In other words, a potential basis for a refund does not automatically translate into a right to a credit against required contributions.

**2      Plaintiffs' Entitlement to Interest, Liquidated Damages, Attorney's Fees, Auditor's Fee and Other Costs**

Defendant does not dispute that it owes the delinquent contributions; however, without any support, defendant simply asserts that there is a material factual dispute relating to whether the other items of damages and costs are due.

The relevant statute provides that, when a judgment has been entered against an employer for failing to make its required contributions,

The court shall award the plan --

(A) the unpaid contributions,
(B) interest on the unpaid contributions,
(C) an amount equal to the greater of--
       (i) interest on the unpaid contributions, or

>    (ii) liquidated damages provided for under the plan in an amount
>    not in excess of 20 percent [. . .] of the amount determined by the
>    court under subparagraph (A),
>    (D) reasonable attorney's fees and costs of the action, [. . . ] and
>    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g). This language is mandatory. Therefore, once it is determined that, as here, a

defendant is delinquent in its contributions, the statute is clear that interest, liquidated damages,

and attorney's fees are mandatory. There is no room for consideration of any alleged "material

factual disputes." In addition, the Court finds merit in *Operating Engineers Pension Trust v. A-C*

*Co.*, 859 F.2d 1336, 1343 (9th Cir. 1988), which found that awarding the cost of the independent

audit under subsection (E) "is consistent with the policy of encouraging full and fair

contributions[.]"

Accordingly, in addition to the unpaid contributions, the Court will enter

judgment in plaintiffs favor for interest on the unpaid contributions, liquidated damages,

reasonable attorney's fees and costs of the action, including the cost of the independent audit.

The amount of these items will need to be determined at an evidentiary hearing, unless the

parties wish to attempt to reach an agreement on their own or with the assistance of a court

mediator.

### III. CONCLUSION

For the reasons set forth above, plaintiffs' motion to strike the affidavit of Basem

Odetallah (Doc. No. 27) is **GRANTED**. In addition, plaintiffs' motion for summary judgment

(Doc. No. 24) is **GRANTED** as to liability and the amount of the judgment will be determined

through separate proceedings.

## IV.  SUBSEQUENT PROCEEDINGS

In order to determine the exact amount owed by the defendant, including interest on the unpaid contributions of $43,769.92, liquidated damages, reasonable attorney's fees and costs of the action, including the cost of the independent audit, the Court will need to conduct a hearing. However, the parties may also wish to resolve this through mediation.

Accordingly, by March 27, 2009, the parties shall file a joint statement indicating whether they can agree to an amount or, if not, whether they wish to attempt mediation and, if so, whether they prefer the services of the Court's ADR Office, those of the magistrate judge assigned to the case (Magistrate Judge James S. Gallas), or a private mediator. If the parties choose mediation, the mediation must be completed on or before April 20, 2007.

In the event the parties cannot settle the case, or do not choose to mediate, or that mediation is unsuccessful, the Court will conduct an evidentiary hearing on the record to establish the judgment amount. The hearing will be conducted on April 24, 2009 at 9:00 AM in Courtroom 530, Akron, Ohio.

**IT IS SO ORDERED**.

Dated: March 17, 2009

_____
**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**

11