UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 - RETAIL FOOD EMPLOYERS PENSION FUND, et al., | ) ) ) ) ) | CASE NO. 1:08CV735 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | |
| FOREST HILLS SUPERMARKET, INC. dba Forest Hills Family Foods, | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| DEFENDANT. | ) ) | |

On March 17, 2009, the Court issued its Memorandum Opinion and Order (Doc. No. 28) granting summary judgment in favor of the plaintiffs on the issue of liability, but reserving the question of damages. The plaintiffs filed a motion for judgment on damages (Doc. No. 40) and the parties subsequently stipulated to some of the elements of damages (*see* Doc. No. 44). The Court conducted a hearing with respect to attorneys fees, costs and audit fees. In preparation for the hearing, plaintiffs filed a pre-hearing brief. (Doc. No. 46). Defendant filed no written opposition to either Doc. No. 40 or Doc. No. 46, apparently intending to rely solely on its counsel's arguments at the hearing. The issue of damages is now ready for determination.

**I. BACKGROUND**

This action was brought to collect contributions owed by the defendant to the plaintiff pension fund. At the time the action commenced, the amount of delinquent contributions had yet to be determined. To that end, a payroll audit was conducted by the plaintiff. Ultimately,

the Court ruled on plaintiff's motion for summary judgment that, pursuant to 29 U.S.C. § 1132, the fund was owed $43,769.92, plus interest, liquidated damages, reasonable attorneys' fees, and costs and expenses, including the cost of the payroll audit.

The parties have now stipulated that the interest on the unpaid contributions is $8,160.18 as of March 17, 2009 and that liquidated damages are $8,753.98.

The Court must determine the remaining elements of damages, including reasonable attorneys' fees and costs. In addition, post-judgment interest will be awarded.

## II. DISCUSSION

### A. Attorneys' Fees

Plaintiffs seek attorneys' fees for work performed by two law firms through June 19, 2009 in the amount of $76,961.00.[1]

A prevailing plaintiff in a delinquency collection case under ERISA is entitled to a mandatory award of attorneys' fees. 29 U.S.C. § 1132(g)(2)(D). The Court must determine a reasonable amount of attorneys' fees using the "lodestar" approach, *Building Serv. Local 47 Cleaning Con. v. Grandview*, 46 F.3d 1392, 1401 (6th Cir. 1995), that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court "also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Id*. at 434. In addition, the district court may consider other factors "to adjust the fee upward or downward[.]" *Id*.

In this case, plaintiffs were represented by two law firms. Because the Pension Fund is collectively bargained, half the trustees are from the union and half are from the

---

[1] In their original motion, filed on May 13, 2009, plaintiffs sought a total of $52,963.00 in attorneys fees. In their pre-hearing brief, filed on June 23, 2009, that amount had risen to $71,721.00. By the time of the hearing on July 8, 2009, the amount was $76,961.00.

employers who contribute to the fund. Schwarzwald McNair Fusco ("the Schwarzwald firm") represented the union trustees and Littler Mendelson ("the Littler firm") represented the employer trustees. At the hearing, this arrangement was described by Attorney Daniel White (of the Schwarzwald firm) as "typical for this client." He also noted that his firm held the "laboring oar" and that he was assisted by two other attorneys from his firm, Shannon Rogers and David Fusco. Mr. White and Mr. Fusco, as partners, both billed at $270/hour and Ms. Rogers, as an associate, billed at $200/hour, standard rates for the Schwarzwald firm. The firm also billed at $75/hour for the work of law clerks. The fees generated by the Schwarzwald firm in connection with the case, totaling $70,400.00, are itemized in Exhibit A, which was admitted into evidence at the hearing.

The attorneys from the Schwarzwald firm worked with Neal Wainblat of the Littler firm. Mr. Wainblat confirmed at the hearing that the Schwarzwald firm did, indeed, do the majority of the work on the case, with Mr. Wainblat primarily reviewing documents and exchanging ideas as to how to prosecute the case. The Littler firm typically bills between $395 to $415 per hour; however, it bills its multiemployer plan clients, such as plaintiffs, at a lower rate of $270/hour. The fees generated by the Littler firm, totaling $6,561.00, are itemized in Exhibit B, which was admitted into evidence at the hearing.

During the hearing, the Court questioned Mr. White of the Schwarzwald firm as to whether this type of case is something that his firm could handle or whether it was so unusual that it required the assistance of co-counsel. Mr. White responded that his firm could have handled it alone but that the trustees chose to have two firms representing them. Similarly, when Mr. Wainblat of the Littler firm was asked by the Court whether the Schwarzwald firm was

competent to handle this case alone, he answered in the affirmative, but indicated that it was the plaintiffs' choice to hire co-counsel from two different firms.

Defendant's counsel stated at the hearing that defendant is not opposing the hourly rates charged by plaintiffs' counsel. Rather, defendant challenges the number of hours being billed, asserting that they far exceed any reasonable amount of hours expended on a simple collection case. Plaintiffs' counsel testified that, in their view, the hours expended were reasonable, given what they generally characterized as defendant's counsel's consistent lack of cooperation, which resulted in their devoting far more time to the case than might otherwise have been necessary.

The Court finds defendant's position well-taken in large part. There appears to have been no reason for plaintiffs to be represented by two law firms. This was purely the trustees' choice and not necessitated by the complexity of the case. Since the Schwarzwald firm had the "laboring oar" in the case, the Court will consider only the hours submitted by that firm. That, however, does not end the analysis because the Court must count only those hours that were "reasonably expended."[2]

The Court has carefully reviewed Exhibit A, the detailed time records of the Schwarzwald firm, and concludes that the hours spent are excessive.[3] For example, 18.4 hours were spent simply drafting the complaint. Of these, 6.7 are billed at $270/hour and 11.7 are billed at $200/hr. Although, at the hearing, counsel tried to justify this amount of time by

---

[2] The time records submitted by the Schwarzwald firm are replete with references to telephone conferences with and e-mails to Attorney Wainblat at the Littler firm. When evaluating the reasonableness of the hours spent by the Schwarzwald firm, the Court will attempt to exclude time spent consulting with the second law firm.

[3] It is not feasible to evaluate every single time entry; therefore, the Court will give several examples of what it concludes is excessive billing.

asserting that there were several drafts and that it took some time to determine just what causes of action would be included in the complaint, the Court does not find this argument convincing.[4]

Just as the time spent drafting the complaint is excessive, so are other tasks performed by plaintiff's counsel. For example, there are several time entries for the drafting of letters and e-mails; however, the entries are rarely clear as to the content or purpose of these communications. In addition, the time records are replete with entries indicating the Schwarzwald firm's consultation with the Littler firm (by telephone or e-mail) virtually every time any action was taken in the case.[5]

Plaintiffs' counsel insist that part of the reason they spent so much time on the case is that defendant's counsel used delaying tactics which compounded their work. The Court takes no position as to the truth of this assertion. However, an examination of the time records reveals that, even if the assertion is taken as true, plaintiffs' counsel still devoted inordinate amounts of time to resolving these simple disputes. For example, the entries in Exhibit A dated May 12 through June 5, 2008 reflect exchanges over initial pre-discovery disclosures which defendant allegedly did not make in a timely fashion.[6] In all, 6.4 hours at $270/hour were

---

[4] The Complaint is very simple, almost boilerplate, containing two counts: one for the unpaid pension fund contributions and the other seeking an audit of the records of the defendant. Although plaintiffs' counsel testified that there were other causes of action considered, no drafts were submitted as proof of that assertion.

[5] As already noted, the Court considers work by the second law firm to be superfluous in this case. It is also interesting to note that, when the Schwarzwald firm indicates a telephone conference with Mr. Wainblat of the Littler firm, Mr. Wainblat's time records do not always include a matching entry for the same date. This is probably attributed in part to different law firms' methods of computing time for billing purposes. In fact, Mr. Wainblat did testify at the hearing that he actually spent more time on the case than his records would indicate. Even so, this consistent discrepancy does make the Court question the need for some of the charges assessed by the Schwarzwald firm.

[6] One of these entries is of particular concern to the Court because it is illustrative of many of the other time entries in Exhibit A. This is the one dated May 14, 2008. Defendant's disclosures were due on May 15, 2008. On May 14th, Plaintiffs' counsel utilized one-half hour (for $135, billing at the partner's rate) to draft a letter to defendant's counsel reminding him of that deadline. Clearly it is each counsel's responsibility to remember his own deadlines and it is simply multiplying work for opposing counsel to send reminder letters. Admittedly, spending a half hour on

devoted to trying to obtain these disclosures and to drafting a letter to the Court seeking assistance. This is excessive.

The time records also reveal that the excessive amounts of time spent by plaintiffs' counsel cannot be blamed solely on the defendant's or its counsel's seemingly dilatory behavior. As an example -- plaintiffs' counsel spent 10.6 hours preparing for and traveling to the Case Management Conference. Generously assuming that 3.0 hours were spent in travel time between the law offices in Cleveland to the Court's chambers in Akron, that means the remaining 7.6 hours were spent in preparation. Of these hours, all but 1.4 were billed at the partner rate. The Case Management Conference, which admittedly is a very important conference to the Court, actually lasted only 30 minutes. Typically these conferences last no more than one hour. Therefore, it is a mystery how one could spend 7.6 hours preparing for the conference.[7]

Another problem that the Court has with the billing records is the fact that virtually every task, from drafting a letter to legal research to attendance at conferences, was performed by the partner and billed at the higher partner rate. For example, the Court requires periodic status reports and provides counsel with a form for such reports. The billing records show that, from August 25 to August 28, 2008, 1.8 hours were devoted to completing this very simple report and these hours were performed by the partner billing at the higher rate. The only exception to this pattern was the preparation of the motion for summary judgment, for which the

---

this task is not, by itself, excessive; however, doing this repeatedly (which the time records confirm) is unreasonable for billing purposes.

[7] Although counsel might argue that he spent so much time preparing because he is aware of the importance placed on the CMC by the Northern District of Ohio, clearly it was not important enough for him to also abide by the requirement that parties either attend in person or be excused by the Court. The docket reflects that there were *no* party representatives in attendance despite the fact that no one had been excused. Therefore, the Court finds it hard to see how 7.6 hours could be spent preparing for a conference that the parties themselves did not view as important enough to attend, despite the Court's requirement that they do so.

Schwarzwald firm billed 46.4 hours (10.5 hours at the partner rate and 35.9 hours at the associate rate).[8]

All in all, after carefully reviewing the billing records of the Schwarzwald firm, and even recognizing that the conduct of the defendant and/or its counsel may have required plaintiffs' counsel to perform more work than would normally be required in a case of this nature, the Court reaches the conclusion that the time spent was not reasonable. It is impossible to itemize exactly which of the billing entries to count and which to exclude. However, based roughly on the examples listed above, which are merely illustrative, and even though an argument could be made for a further reduction, the Court will grant only two-thirds of the dollar amount claimed by the Schwarzwald firm. This is more than generous given that most of the time was billed at the higher partner rate, even for simple tasks that, in the Court's view, might better have been performed by an associate and simply quickly reviewed by the partner.[9]

Accordingly, for the reasons set forth above, the Court awards a total of $46,933.00 in attorneys fees to the Schwarzwald firm, payable by the defendant. No fees are awarded against the defendant for the Littler firm.

**B.     Audit Costs**

Plaintiffs seek audit fees in the amount of $9,290.00. These fees are itemized in Exhibit D, which was admitted at the hearing. Defendant has not filed any objection to this amount and did not seem to challenge it in any way at the hearing.

---

[8] Given the straight-forward nature of the defendant's liability in this case, 46.4 hours is arguably a bit excessive for a work product that ended up to be fourteen (14) pages (*see* Doc. No. 24, Motion and Brief in Support). There was really only one thorny legal issue, that being whether defendant was entitled to a credit for amounts that had been improperly paid to the pension fund for persons who were not employed by the defendant.

[9] As already noted, defendant does not oppose the rates charged by the Schwarzwald firm; he challenges only the reasonableness of the hours spent.

The Court concludes that the fees charged (and already paid by the plaintiffs' to the auditors) are reasonable and clearly recoverable from the defendant.

Accordingly, the Court awards $9,290.00 against the defendant and in favor of the plaintiffs.

**C.     Costs of the Litigation**

Plaintiffs seek costs in the amount of $929.65.[10] These are itemized in Exhibit C, which was admitted into evidence at the hearing. The costs encompass duplicating, postage, facsimile expenses, and online legal research. The Court has examined Exhibit C and finds the costs to be reasonable. Defendant has not opposed any of these costs.

Accordingly, the Court awards $929.65 against the defendant and in favor of the plaintiffs.

**D.     Postjudgment Interest**

Under 28 U.S.C. 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." The interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." In addition, the postjudgment interest is calculated on the entire damages judgment, including any prejudgment interest, attorneys fees and costs. *Caffey v. Unum Life Ins. Co.*, 302 F.3d 576, 586 (6th Cir. 2002) (citing cases supporting the proposition that "postjudgment interest should be awarded on the entire amount of the judgment").

---

[10] The original motion sought costs in the amount of $889.94. (Doc. No. 40.)

The relevant average interest rate for the week preceding this judgment is 0.41. Accordingly, postjudgment interest at that rate is awarded on the total award listed in the Conclusion section below.

### III. CONCLUSION

For the reasons set forth above and in the Joint Proposed Stipulation (Doc. No. 44), the Court will enter judgment against the defendant and in favor of the plaintiffs for the following:

| | |
|---|---|
| Unpaid Contributions | $ 43,769.92 [stipulated] |
| Interest | $ 8,160.18 [stipulated] |
| Liquidated Damages | $ 8,753.98 [stipulated] |
| Attorneys' Fees | $ 46,933.00 |
| Audit Costs | $ 9,290.00 |
| Costs of Litigation | $ 929.65 |
| **TOTAL** | **$117,836.73** |

In addition, postjudgment interest at the rate of 0.41 is awarded on the total $117,836.73 award of damages.

**IT IS SO ORDERED**.

Dated: December 31, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**